

KAYE, SCHOLER, FIERMAN,
   HAYS & HANDLER, LLP
JEFFREY S. GORDON – State Bar Number 76574
JULIAN BREW – State Bar Number 150615
1999 Avenue of the Stars, Suite 1600
Los Angeles, California  90067
Telephone:      (310) 788-1000
Facsimile:       (310) 788-1200

Attorneys for Plaintiff
CHINA NATIONAL METAL PRODUCTS
IMPORT/EXPORT COMPANY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHINA NATIONAL METAL PRODUCTS IMPORT/EXPORT COMPANY | CASE NO. |
| Plaintiff, | **COMPLAINT FOR BREACH OF CONTRACT, ACCOUNT STATED, PROVISIONAL RELIEF PENDING ARBITRATION OF CLAIMS, AND STAY OF ALL PROCEEDINGS PENDING ARBITRATION OF CLAIMS** |
| v. | |
| APEX DIGITAL, INC. | |
| Defendant. | |

**JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction over this action pursuant to 9 U.S.C. § 201, because this lawsuit arises out of a contract in international commerce providing for arbitration of disputes, and 28 U.S.C. §§ 1332(a) because the matter in controversy is between plaintiff that is a citizen of a foreign state and defendant that is a citizen of this state, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.      Venue is proper in this Court pursuant to 9 U.S.C. § 204 and 28 U.S.C. §§ 1391(a), (b) and (c), because this is a civil action brought in a judicial district in which the defendant resides, a substantial part of the events giving rise to the claims occurred, and is also a judicial district in which the defendant is subject to personal jurisdiction.

////

ENTER ON ICMS

FEB 2 1 2001

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP



02/20/01                        3:08.37 PM
RS   1-1  MARKED      Receipt # 015712
====NO REFUND WITHOUT RECEIPT====
CASE # EDCV01 - 1.30

086900    Filing Fee Civil
                      60.00
S10000    Special Fund F/F
                      90.00
==== T O T A L ====

CHECK TENDERED $              $150.00
CHECK 18278
          THANK YOU

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

## NATURE OF THE ACTION

3. Plaintiff brings this action to seek remedies as a result of defendant's failure to pay $20,483,272. due and owing under written contracts, pursuant to which plaintiff sold DVD players to defendant. Defendant has also breached its agreements with plaintiff in other important ways, including its blatant refusal to place receipts in a "lock-box" account and to notify customers to send payments to "lock-box" accounts, all in direct violation of its specific written agreements and representations. The agreements between plaintiff and defendant provide for final and binding arbitration of these claims before the China International Economic Trade Arbitration Commission ("CIETAC"), and therefore are governed by the Convention on Enforcement and Recognition of Foreign Arbitration Awards (the "Convention"), codified at 9 U.S.C. §§ 201, *et seq.*, which provides for enforcement in federal courts of agreements to arbitrate claims in international commerce. By this action, plaintiff does not seek to recover its damages from defendant, but reserves the right to arbitrate its claims before CIETAC. Plaintiff brings this action to seek provisional remedies, such as attachment, ancillary to any arbitration before CIETAC of its claims against defendant. Plaintiff also requests a stay of all other proceedings in this action pending arbitration before CIETAC.

## PARTIES

4. Plaintiff China National Metal Products Import/Export Company ("MinMetals") is a corporation organized under the laws of, and doing business in, the People's Republic of China (the "PRC"). MinMetals is, among other things, an exporter of goods, including consumer electronics, from the PRC.

5. Defendant Apex Digital, Inc. ("Apex") is a corporation organized under the laws of the State of California, with its principal place of business in Ontario, California, where it maintains its office and warehouse facilities. Apex, among other things, imports consumer electronics goods, such as television sets and DVD players, from the PRC, which it then sells under its own brand name to "big-box" retailers, such as Circuit City, K-Mart, and Best Buy.

## FACTUAL ALLEGATIONS

6. Between July and September, 2000, MinMetals and Apex entered into a series of written contracts governing Apex's purchase of AD-703 and AD-500A model DVD players ("the

2

1   DVD players") to be shipped from MinMetals in the PRC (collectively, the "Contracts").   The

2   Contracts set forth the number of the DVD players ordered and the price for each of the DVD

3   players.  Each of the Contracts also provides at paragraph 15:

4       "ARBITRATION:  All disputes arising from or in connection with this

5       Contract shall be submitted to the China International Economic and Trade

6       Arbitration Commission for arbitration which shall be conducted by the Commission

7       in Beijing or by its Shenzhen Sub-Commission in Shenzhen or by its Shanghai Sub-

8       Commission in Shanghai at the Claimant's option in accordance with the

9       Commission's arbitration rules in effect at the time of applying for arbitration.  The

10      arbitral award is final and binding upon both parties."

11      7.   As security for payment by Apex under the Contracts, Apex executed a UCC-1

12  financing statement, in which it granted MinMetals a purchase money security interest in the DVD

13  players shipped by MinMetals to Apex and all proceeds of the sale of the DVD players, which

14  MinMetals perfected.  MinMetals filed the UCC-1 financing statement with the California Secretary

15  of State on September 6, 2000; and, thereafter, MinMetals gave written notice to Apex's other

16  secured creditors of MinMetals' purchase money security interest.

17      8.   In August 2000, in an effort to provide MinMetals with further security for payment

18  for the DVD players, MinMetals and Apex entered into an agreement requiring that a "lock-box"

19  account be opened at Guaranty Bank of California, into which all proceeds from the sale of the DVD

20  players purchased from MinMetals would be deposited, and could not be withdrawn without the

21  signatures of both Apex and MinMetals.  Apex also represented to MinMetals that it would notify all

22  of its purchasers to make payments to the "lock-box" account.  No money was ever deposited under

23  this agreement.

24      9.   On or about November 21, 2000, Apex and MinMetals entered into a further

25  agreement, pursuant to which the parties changed the "lock-box" account from Guaranty Bank to

26  Union Bank of California.  This agreement required that Apex notify each of its customers to make

27  all payments for the DVD players to the Union Bank account.  It also required Apex to deposit into

28  the account all money it received on account of the DVD players within 24 hours of receipt and to

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

23035339.WPD                              **COMPLAINT**

1   set up a weekly accounting procedure by Apex to MinMetals.  No money could be withdrawn from

2   the account except by written instructions from both Apex and MinMetals.

3        10.    Pursuant to the Contracts and the other agreements described above, between July and

4   December, 2000, MinMetals shipped the DVD players Apex agreed to purchase to California in a

5   series of installments.  Each shipment of DVD players included an invoice reflecting the amount due

6   under the Contracts for that installment.

7        11.    Apex has completely failed to abide by its Union Bank "lock-box" agreement.  Apex

8   never notified its customers to make payments to the "lock-box" account, nor has it made any

9   payment into the account within 24 hours, or at all, of any of the money it received on account of the

10   DVD players.  Rather, when confronted with this breach, its President David Ji has refused to cure,

11   blatantly stating that it did not want to notify its customers because it would be "embarrassing."  On

12   information and belief, MinMetals alleges that Apex never intended to abide by the "lock-box"

13   agreement, but only entered into the agreement to induce MinMetals to continue doing business with

14   Apex.  As a result of the inducement and promises, MinMetals continued to do business with Apex,

15   but no money has ever been deposited into the "lock-box" account.

16        12.    Apex accepted the DVD players with the Invoices, and never disputed that these

17   Invoices were correct or that these amounts stated were owed, although Apex later returned a small

18   portion of the DVD players, as discussed below, for which MinMetals does not seek attachment.

19   Apex paid the amounts due for only certain other Invoices.  These payments were almost always

20   made late, and only after repeated demands.  Despite MinMetals' written demands, however, Apex

21   has failed and refused to pay the amounts due for many of the shipments, making many excuses,

22   including that it is short of money and unable to pay.  The total unpaid amount on Invoices for the

23   DVD players shipped by MinMetals and accepted by Apex as of the date of this Complaint is

24   $22,742,340.  Set forth below is a chart reflecting the outstanding unpaid Invoices for the DVD

25   players delivered to and accepted by Apex, amounts due for the DVD players at issue under each

26   Invoice, due date, and the number of the Contract to which the shipment related:

27

28

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

4

| Invoice No. | Invoice Amount | Due Date | Contract No. |
|---|---|---|---|
| 00K033H0225 | $2,351,440.00 | November 17, 2000 | 00US11WSC85210224 |
| 00K033H0243 | $1,179,360.00 | December 2, 2000 | 00US11WSC85210232A |
| 00K033H0247 | $1,179,360.00 | December 7, 2000 | 00US11WSC85210232A |
| 00K033H0248 | $1,266,160.00 | December 7, 2000 | 00US11WSC85210232A-1 |
| 00K033H0249 | $  786,240.00 | December 11, 2000 | 00US11WSC85210232A |
| 00K033H0250 | $1,989,680.00 | December 11, 2000 | 00US11WSC85210232A-1 |
| 00K033H0257 | $1,853,280.00 | January 1, 2001 | 00US11WSC85210271 |
| 00K033H0258 | $1,808,880.00 | January 3, 2001 | 00US11WSC85210208 |
| 00K033H0270 | $1,627,920.00 | January 15, 2001 | 00US11WSC85210208 |
| 00K033H0272 | $2,302,320.00 | January 8, 2001 | 00US11WSC85210271 |
| 00K033H0276 | $215,280 | January 15, 2001 | 00US11WSC85210271-1 |
| 00K033H0277 | $861,120.00 | January 15, 2001 | 00US11WSC85210271 |
| 00K033H0278 | $180,880.00 | January 15, 2001 | 00US11WSC85210208 |
| 00K033H0281 | $943,000.00 | January 22, 2001 | 00US11WSC85210271A-1 |
| 00K033H0286 | $1,076,400 | January 29, 2001 | 00US11WSC85210301 |
| 00K033H0289 | $1,076,400 | February 2, 2001 | 00US11WSC85210301 |
| 00K033H0290 | $894,700 | February 5, 2001 | 00US11WSC85210301 |
| 00K033H0291 | $1,150,000 | February 5, 2001 | 00US11WSC85210208 |

13.     Apex has returned a small portion of the DVD players included on some of the Invoices set forth above.  The total contract price for the DVD players that were returned by Apex and were included in the above Invoices is $2,259,068.  Therefore, crediting Apex for the price of the returned DVD players, the total outstanding amount unpaid, due and owing by Apex for DVD players is accepted and has not returned as of the date of this Complaint is $20,483,272.

5

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

14. On January 25, 2001, MinMetals delivered to Apex written demand for payment of the amounts owed as of that date, along with notice of default under the Contracts, Invoices, security agreement and related agreements as a result of its failure to pay. On February 14, 2001, MinMetals delivered to Apex a second demand and notice of default, reflecting additional Invoices that had come due since the date of the January 25, 2001 demand letter.

15. Pursuant to the arbitration provision in the Contracts, MinMetals intends to commence arbitration before CIETAC to recover all amounts owed by Apex, along with interest and such other damages as are recoverable at law. By this action, MinMetals does not seek adjudication of its claims against Apex or recovery of the amounts owed. MinMetals brings this action solely for the purpose of obtaining the provisional remedy of attachment to ensure that MinMetals will be able to recover from Apex all amounts awarded as a result of the arbitration.

## FIRST CAUSE OF ACTION

### (Breach of Written Contract)

16. MinMetals repeats and realleges each of the allegations contained in Paragraphs 1 through 15 hereof, inclusive, as if more particularly set forth herein.

17. As alleged in greater detail above, MinMetals and Apex are parties to written contracts, comprised of the Contracts, UCC-1 financing statement, Invoices and other agreements described above, pursuant to which MinMetals agreed to sell and Apex agreed to buy AD-703 and AD-500A model DVD players on the terms, conditions and prices set forth in the Contracts, UCC-1 financing statement, Invoices and the other agreements, including payment in the amounts set forth in the Contracts and Invoices.

18. MinMetals has fully performed all of its obligations under the foregoing agreements by delivering to Apex the DVD players it had ordered, along with Invoices reflecting the amount owed. Apex accepted delivery of the DVD players and the Invoices, although Apex later returned a small portion of the DVD players, for which MinMetals does not seek recovery or attachment.

19. Apex has breached the foregoing agreements by failing to pay MinMetals all amounts due for the DVD players under the Contracts and Invoices. Apex has further breached the foregoing

agreements by failing and refusing to direct its customers to make payments for those DVD players to the "lock-box" account as agreed, and by converting to its own use funds that were intended for delivery to the "lock-box" account for MinMetals benefit.

20.    As a result of Apex's breaches, MinMetals has been damaged in the amount of $20,483,272, reflecting the total unpaid amount due under the Invoices for the DVD players delivered to, accepted and not returned by Apex.  MinMetals is entitled to recover damages and other relief in an amount no less that $20,483,272 through arbitration before CIETAC, as well as the provisional remedy of attachment in this Court, pending arbitration.

## SECOND CAUSE OF ACTION

### (Account Stated)

21.    MinMetals repeats and realleges each of the allegations contained in Paragraphs 1 through 20 hereof, inclusive, as if more particularly set forth herein.

22.    As alleged in greater detail above, MinMetals and Apex are parties to written contracts, comprised of the Contracts, UCC-1 financing statement, Invoices, and other agreements described above, pursuant to which MinMetals agreed to sell and Apex agreed to buy AD-703 and AD-500A model DVD players on the terms, conditions and prices set forth in the Contracts, UCC-1 financing statement, Invoices and the other agreements, including payment in the amounts set forth in the Contracts and Invoices.

23.    Pursuant to the Contracts, MinMetals delivered to Apex the DVD players it had ordered, along with Invoices reflecting the amount owed.  The Invoices reflected the amount owed by Apex for each delivery of the DVD players.  After receiving the Invoices reflecting amounts owed, Apex did not object or dispute the amount owed as to the Invoices for which payment is sought, although Apex later returned a small portion of the DVD players, for which MinMetals does not seek recovery or attachment..  As a result, an account was stated for the amounts set forth in the Invoices, excluding the DVD players that were returned.

24.    Apex has failed to pay the amount due under Invoices totaling $20,483,272 for the DVD players shipped by MinMetals and accepted and not returned by Apex.  MinMetals is entitled

7

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

1  to recover damages and other relief in an amount no less than $20,483,272 through arbitration before

2  CIETAC, as well as the provisional remedy of attachment in this Court, pending arbitration.

### **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays as follows (with a request for a stay on items 1 through 3, with plaintiff reserving the right to seek recovery through arbitration):

1.  Compensatory damages in an amount to be proven and awarded in arbitration before CIETAC, but in no event less than the $20,483,272 owed under the Contracts and Invoices;

2.  Interest as permitted by law and awarded in arbitration;

3.  Plaintiffs' costs;

4.  Provisional relief pending arbitration before CIETAC, including attachment;

5.  An order staying further proceedings in this action, other than provisional remedies, pending completion of arbitration before CIETAC;

6.  Such other relief as the Court deems just and proper.

DATED:       February 20, 2001            KAYE, SCHOLER, FIERMAN,
                                          HAYS & HANDLER, LLP


                                          By: _____
                                               Julian Brew
                                          Attorneys for Plaintiff CHINA NATIONAL METAL
                                          PRODUCTS IMPORT/EXPORT COMPANY

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP