KAYE, SCHOLER, FIERMAN,
HAYS & HANDLER, LLP
JEFFREY S. GORDON – State Bar Number 76574
JULIAN BREW – State Bar Number 150615
1999 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone: (310) 788-1000
Facsimile: (310) 788-1200

Attorneys for Plaintiff
CHINA NATIONAL METAL PRODUCTS
IMPORT/EXPORT COMPANY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

CHINA NATIONAL METAL PRODUCTS IMPORT/EXPORT COMPANY

Plaintiff,

v.

APEX DIGITAL, INC.

Defendant.

CASE NO. EDCV 01-0130 RT (SGLx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

**(1) APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT; AND**

**(2) REQUEST FOR STAY OF ACTION PENDING ARBITRATION**

Date: March ~~19~~ 20, 2001
Time: ~~10:00 a.m.~~ 1:30 p.m.
Ctrm: ~~4~~ 1

Plaintiff China National Metal Products Import/Export Company ("MinMetals") hereby submits the following memorandum of points and authorities in support of its application for right to attach order and writ of attachment, and its request for a stay of all other proceedings in this lawsuit pending arbitration of the underlying disputes.

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP



## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................. 1

STATEMENT OF FACTS .......................................................... 2

DISCUSSION ..................................................................... 5
    1. The Claim Is For Money Based On A Written Contract. ..................... 7
    2. The Claim Is For A Fixed Amount ........................................ 7
    3. The Claim Is Not Secured By An Interest In Real Property ................ 7
    4. The Claim Is Not Against A Natural Person ............................... 7
    5. It Is More Likely Than Not Plaintiff Will Prevail On Its Claim .......... 8
        a. Breach of Contract ............................................... 8
        b. Account Stated .................................................. 8
    6. Attachment Is Necessary To Ensure MinMetals' Ability To Enforce Any Judgment Resulting From The Arbitration Of Its Claims Against Apex. ............. 9
    7. Plaintiff Does Not Waive Its Right To Arbitration By This Application ... 10

CONCLUSION .................................................................... 11

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

## TABLE OF AUTHORITIES

Page

**CASES**

Borden, Inc. v. Meiji Milk Products Co., Ltd., 919 F.2d 822 (2d Cir. 1990) . . . . . 6

Boys Market, Inc. v. Retail Clerks Union, 398 U.S. 235 (1970) . . . . . 6, 11

California Bean Growers Ass. v. Williams, 82 Cal. App. 434, 255 P. 751 (1927) . . . . . 9

California Milling Corp. v. White, 229 Cal.App.2d 469, 40 Cal.Rptr. 301 (1964) . . . . . 8

Carolina Power & Light Company v. Uranex, 451 F.Supp. 1044 (N.D. Cal. 1977) . . . . . 6, 10

Chrysler Credit Corp. v. Superior Court, 17 Cal. App. 4th 1303, 22 Cal. Rptr. 2d 37 (1993) . . . . . 10

Compania de Navegacion y Financiera Bosnia v. National Unity Marine Salvage Corp., 457 F. Supp. 1013 (S.D.N.Y. 1978) . . . . . 6

Davenport v. Blue Cross of Calif., 52 Cal.App.4th 435 (1997) . . . . . 6

E.A.S.T., Inc. of Stamford, Connecticut v. M/V. Alia, 876 F.2d 1168 (5th Cir. 1989) . . . . . 6

Lacy Mfg. Co. v. Gold Crown Mining Co., 52 Cal. App. 2d 568, 126 P.2d 644 (1942) . . . . . 9

McCreary Tire & Rubber Co. v. Ceat, S.p.A., 501 F.2d 1032 (3rd Cir. 1974) . . . . . 6

Oldroyd v. Elmira Savings Bank, FSB, 134 F.3d 72 (2d Cir. 1998) . . . . . 11

Perry v. Schwartz, 219 Cal.App.2d 825, 33 Cal.Rptr. 511 (1963) . . . . . 8, 9

PMS Distributing Co., Inc. v. Huber & Suhner, A.G., 863 F.2d 639 (9th Cir. 1988) . . . . . 6, 11

Sure-Grip Skate Wheel Co. v. Bergin,
208 Cal.App.2d 562, 25 Cal.Rptr. 413 (1962) . . . . . . . . . . 9

The Anoconda v. American Sugar Co.,
322 U.S. 42 (1944) . . . . . . . . . . 10

Zinn v. Fred R. Bright Co.,
271 Cal.App.2d 597, 76 Cal.Rptr. 663 (1969) . . . . . . . . . . 9

**STATUTES**

9 U.S.C. § 201 . . . . . . . . . . 1, 5, 6

9 U.S.C. § 208 . . . . . . . . . . 6

Code of Civil Procedure § 481.190 . . . . . . . . . . 8

Code of Civil Procedure § 483.010 . . . . . . . . . . 6

Code of Civil Procedure § 483.010(a) . . . . . . . . . . 6, 7

Code of Civil Procedure § 483.010(b) . . . . . . . . . . 7

Code of Civil Procedure § 483.010(c) . . . . . . . . . . 7

Fed. Rules of Civ. Proc. § 64 . . . . . . . . . . 6

**OTHER AUTHORITIES**

4 B. Witkin, Cal. Procedure, "Pleading," § 476, p. 570 (4th ed. 1997) . . . . . . . . . . 8

Cal. Comm. Code § 9306(3)(b) . . . . . . . . . . 10

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

## INTRODUCTION

Plaintiff China National Metal Products Import/Export Company ("MinMetals") seeks the provisional remedy of attachment under California law to secure its claims against defendant Apex Digital, Inc. ("Apex") for $20,483,272 due under written contracts for the sale of specific models of DVD players. Apex has repeatedly breached the contracts by failing to pay and by failing to take any steps to ensure that proceeds of its resale of the DVD players were deposited into a "lock-box" account as required by its contracts with MinMetals. Despite MinMetals' repeated demands, Apex has continued to refuse to pay MinMetals or to cure its other breaches.

The contract between MinMetals and Apex provides for binding arbitration of disputes before the China International Economic Trade Arbitration Commission ("CIETAC"), and therefore is governed by the Convention on Enforcement and Recognition of Foreign Arbitration Awards (the "Convention"), codified at 9 U.S.C. §§ 201, *et seq.*. The Convention provides for enforcement in federal courts of agreements to arbitrate claims in international commerce, but allows parties who have arbitrable claims to obtain provisional remedies such as attachment pending arbitration. In this action, MinMetals does not seek adjudication of its claims against Apex. MinMetals reserves the right to arbitrate those claims before CIETAC. MinMetals here seeks only provisional remedies, including attachment, in aid of arbitration, and further requests that the Court stay all other proceedings in this action pending completion of the arbitration.

California law governs the right to attachment in this case. All of the requirements for attachment under California law have been established. As set forth below and in the Declaration of Fang Gang (the "Gang Declaration") filed herewith, MinMetals has a very high likelihood of success on its claims against Apex for money due under written contracts and account stated, and none of the exceptions to the attachment remedy under California law applies here. MinMetals is entitled to a right to attach order and writ of attachment against Apex's property to secure MinMetals' ability to recover any award it may ultimately obtain.

In addition, the evidence shows a particular need for attachment to protect MinMetals' ultimate ability to recover what it is owed. Apex has admitted financial difficulties, and that it never intended to abide by its agreements with MinMetals. Apex has also refused to take required steps to

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

protect MinMetals' perfected security interest in the proceeds of sales of the DVD players, with the result that, absent attachment, MinMetals' security interest in those proceeds may be lost, and the proceeds instead used by Apex for other purposes.

## STATEMENT OF FACTS

MinMetals is a corporation organized under the laws of, and doing business in, the People's Republic of China (the "PRC"), engaged, among other things, in the business of exporting goods, including consumer electronics, from the PRC. (Gang Decl., ¶ 2). Apex is a California corporation doing business in Ontario, California, where it maintains its office and warehouse facilities. (Id.) Apex, among other things, imports consumer electronics goods, such as television sets and DVD players, from the PRC, which it then sells under its own brand name to "big-box" retailers, such as Circuit City, K-Mart and Best Buy. (Compl., ¶ 3).

Between July and September, 2000, MinMetals and Apex entered into a series of written contracts pursuant to which Apex agreed to buy from MinMetals AD AD-703 and AD-500A model DVD players ("the DVD players") to be shipped from the PRC to Apex in California (collectively, the "Contracts"). (Gang Decl., ¶ 3 & Exh. 1). The Contracts set forth the number of each model of the DVD players ordered, the unit price for each of the DVD players and the total amount due from Apex for the DVD players. Each of the Contracts provides at paragraph 15:

> "ARBITRATION: All disputes arising from or in connection with this Contract shall be submitted to the China International Economic and Trade Arbitration Commission for arbitration which shall be conducted by the Commission in Beijing or by its Shenzhen Sub-Commission in Shenzhen or by its Shanghai Sub-Commission in Shanghai at the Claimant's option in accordance with the Commission's arbitration rules in effect at the time of applying for arbitration. The arbitral award is final and binding Upon both parties."

As security for payment by Apex under the Contracts, Apex executed a UCC-1 financing statement, in which it granted MinMetals a purchase money security interest in the DVD players shipped by MinMetals to Apex and all proceeds of the sale of the DVD players, which MinMetals perfected. (Gang Decl., ¶ 4 & Exh. 2). MinMetals recorded the UCC-1 financing statement with the

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

California Secretary of State on September 6, 2000. (Gang Decl., ¶ 4). MinMetals also gave written notice to Apex's other secured creditors of MinMetals purchase money security interest. (Id.)

In August 2000, to provide MinMetals with further security for payment for the DVD players to be shipped to Apex, MinMetals and Apex entered into an agreement requiring that a "lock-box" account be opened at Guaranty Bank of California. (Gang Decl., ¶ 5 & Exh. 3). The agreement provided that all proceeds from Apex's sale of the DVD players it had purchased from MinMetals would be deposited into the Guaranty Bank "lock-box" account, from which the proceeds could not be withdrawn without MinMetals's written consent. (Id.). Apex also represented that it had notified all of its purchasers to make payments to the "lock-box" account. (Id.) No money was ever deposited under this agreement. (Id.)

On or about November 21, 2000, Apex and MinMetals entered into a further agreement, pursuant to which the parties changed the "lock-box" account from Guaranty Bank to Union Bank of California. (Gang Decl., ¶ 6 & Exh. 4). The agreement required that Apex notify all of its customers to make all payments for the DVD players to the Union Bank account. (Id.) It also required Apex to deposit into the account all money it received on account of the DVD players within 24 hours of receipt and to set up a weekly accounting procedure to MinMetals. (Id.) No money could be withdrawn from the account except by written instructions from both Apex and MinMetals.

Pursuant to the Contracts and the other agreements described above, between July and December, 2000, MinMetals shipped the DVD players to Apex in a series of installments. (Gang Decl., ¶ 8). Each shipment of the DVD players included an invoice reflecting the amount due under the Contracts for that installment. (Id. & Exh. 5).

Apex accepted the DVD players with the Invoices and never disputed that these Invoices were correct or that the amounts stated were owed, although, as discussed below, Apex later returned a small portion of the DVD players, which MinMetals has credited to Apex and for which it does not seek recovery or attachment. (Gang Decl., ¶ 8). Apex has paid the amounts due for only certain shipments of other DVD players. (Id., ¶ 9) Despite MinMetals' repeated demands, however, Apex has failed and refused to pay the amounts due for many shipments of the DVD players. (Id.) MinMetals has received no payment on Invoice Nos. 00K033H0225, 243, 247, 248, 249, 250, 257,

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

258, 270, 272, 276, 278, 281, 286, 290 and 291. (Id. & Exh. 5) The total amount owed for the DVD players at issue under those Invoices is $22,742,340. (Id.) Set forth below is a chart showing the outstanding unpaid Invoices for the DVD players delivered to and accepted by Apex, amounts due under each Invoice, due date, and the number of the Contract to which the shipment related:

| Invoice No. | Invoice Amount | Due Date | Contract No. |
|---|---|---|---|
| 00K033H0225 | $2,351,440.00 | November 17, 2000 | 00US11WSC85210224 |
| 00K033H0243 | $1,179,360.00 | December 2, 2000 | 00US11WSC85210232A |
| 00K033H0247 | $1,179,360.00 | December 7, 2000 | 00US11WSC85210232A |
| 00K033H0248 | $1,266,160.00 | December 7, 2000 | 00US11WSC85210232A-1 |
| 00K033H0249 | $ 786,240.00 | December 11, 2000 | 00US11WSC85210232A |
| 00K033H0250 | $1,989,680.00 | December 11, 2000 | 00US11WSC85210232A-1 |
| 00K033H0257 | $1,853,280.00 | January 1, 2001 | 00US11WSC85210271 |
| 00K033H0258 | $1,808,880.00 | January 3, 2001 | 00US11WSC85210208 |
| 00K033H0270 | $1,627,920.00 | January 15, 2001 | 00US11WSC85210208 |
| 00K033H0272 | $2,302,320.00 | January 8, 2001 | 00US11WSC85210271 |
| 00K033H0276 | $215,280 | January 15, 2001 | 00US11WSC85210271-1 |
| 00K033H0277 | $861,120.00 | January 15, 2001 | 00US11WSC85210271 |
| 00K033H0278 | $180,880.00 | January 15, 2001 | 00US11WSC85210208 |
| 00K033H0281 | $943,000.00 | January 22, 2001 | 00US11WSC85210271A-1 |
| 00K033H0286 | $1,076,400 | January 29, 2001 | 00US11WSC85210301 |
| 00K033H0289 | $1,076,400 | February 2, 2001 | 00US11WSC85210301 |
| 00K033H0290 | $894,700 | February 5, 2001 | 00US11WSC85210301 |
| 00K033H0291 | $1,150,000 | February 5, 2001 | 00US11WSC85210208 |

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

Apex has recently returned a small portion of the DVD players included on the above Invoices. (Id.) The total contract price for the DVD players that were returned by Apex and were included in the above Invoices is $2,259,068. (Id.) Crediting Apex for the price of the returned DVD players, the total outstanding amount owed by Apex as of the date of this action is $20,483,272. (Id.)

Apex completely failed to abide by its Union Bank "lock-box" agreement. Apex never notified its customers to make payments to the "lock-box" account, nor has it made any payment within 24 hours, or at all, of any money it received on account of the DVD players, all as required by its November 21 agreement. (Id., ¶ 6). Its President David Ji has refused to cure, blatantly stating that it did not want to notify its customers because it supposedly would be "embarrassing." (Id.)

On January 25, 2001, MinMetals delivered to Apex written demand for payment of the amount due and owing for the DVD players, as set forth above, along with notice of default under the Contracts, Invoices, security agreement and other agreements described above as a result of its failure to pay. (Gang Decl., ¶ 10 & Exh. 6). On February 15, 2001, MinMetals delivered to Apex a second demand letter and notice of default reflecting the additional Invoices that had come due since the January 25, 2001 letter. (Id. & Exh. 7).

Pursuant to the arbitration provision in the Contracts, MinMetals intends to commence arbitration before CIETAC to recover all amounts owed by Apex, along with interest and such other damages as are recoverable at law. By this action, MinMetals does not seek adjudication of its claims against Apex or recovery of the amounts owed. MinMetals brings this action solely for the purpose of obtaining the provisional remedy of attachment to ensure that MinMetals will be able to recover from Apex all amounts awarded as a result of the arbitration. MinMetals also specifically requests that the Court stay all further proceedings pending arbitration.

## DISCUSSION

The United States and China are both parties to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). 9 U.S.C. § 201 (annotations reciting the Convention and signatory states). The Federal Arbitration Act ("FAA") contains provisions implementing the Convention, which requires courts to enforce commercial arbitration agreements

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

between domestic and foreign parties. See 9 U.S.C. §§ 201, *et seq.* In the absence of a conflict with the Convention, the procedures for enforcement of arbitration agreements under the FAA govern arbitration agreements subject to the Convention. 9 U.S.C. § 208.

It is well established that, under the FAA, federal courts can grant writs of attachment or other provisional remedies in aid of arbitration. The Ninth Circuit has held that "the fact that a dispute is arbitrable . . . does not strip [the court] of authority to grant a writ of possession pending the outcome of the arbitration so long as the criteria for such a writ are met." PMS Distributing Co., Inc. v. Huber & Suhner, A.G., 863 F.2d 639, 642 (9th Cir. 1988); see also Davenport v. Blue Cross of Calif., 52 Cal.App.4th 435, 451 (1997) (injunctions are authorized to preserve status quo pending arbitration subject to FAA). Several courts have also specifically held that provisional remedies are available in connection with arbitrations subject to the Convention. See, e.g., Carolina Power & Light Company v. Uranex, 451 F.Supp. 1044, 1051 (N.D. Cal. 1977); E.A.S.T., Inc. of Stamford, Connecticut v. M/V. Alia, 876 F.2d 1168, 1173 (5th Cir. 1989); Compania de Navegacion y Financiera Bosnia v. National Unity Marine Salvage Corp., 457 F. Supp. 1013 (S.D.N.Y. 1978); Borden, Inc. v. Meiji Milk Products Co., Ltd., 919 F.2d 822, 826 (2d Cir. 1990).[1]

The applicable procedures to obtain provisional relief are those under the laws of the forum state. Fed. Rules of Civ. Proc. § 64. In California, writs of attachment are governed by California Code of Civil Procedure section 483.010 *et. seq.* Under California law, an attachment may be issued on a claim for a fixed or readily ascertainable amount of money not less than $500, which is based on a contract, is not against a natural person, and is not secured by an interest in real property. Cal.

---

[1] While most courts agree that provisional remedies such as attachment are available in connection with arbitrations subject to the Convention, the Third Circuit has disagreed. McCreary Tire & Rubber Co. v. Ceat, S.p.A., 501 F.2d 1032, 1038 (3rd Cir. 1974). The Third Circuit's holding is contrary to the weight of authority cited above, including the holding of the Northern District of California in Carolina Power & Light Company v. Uranex, 451 F.Supp. at 1051. It also is contrary to the reasoning of the Supreme Court in Boys Market, Inc. v. Retail Clerks Union, 398 U.S. 235 (1970) that the availability of provisional remedies encourages rather than interferes with agreements to arbitrate. While the Ninth Circuit has not addressed this specific question, it applied the same reasoning as the Northern District in holding that provisional remedies are available for claims subject to arbitration under the FAA. PMS Distributing Co., Inc., 863 F.2d at 642.

Code Civ. Proc. § 483.010(a). A plaintiff is entitled to attachment for such a claim upon establishing the probable validity of the claim, or that the plaintiff more likely that not will prevail, without the need for any further showing. Id. All of the requirements have been met for this Court to properly issue a right to attach order and a writ of attachment.

1. The Claim Is For Money Based On A Written Contract.

As set forth below and in the Complaint in this action, MinMetals seeks recovery from Apex for money owed under a series of written contracts, pursuant to which Apex agreed to buy and MinMetals agreed to sell AD-703 and AD-500 model number DVD players for specified prices. (Gang Decl., ¶¶ 3, 8 & 9; Compl., ¶¶ 15-19).

2. The Claim Is For A Fixed Amount.

As required by the Code of Civil Procedure section 483.010(a), the claim is a fixed or readily ascertainable amount of not less than $500. The contracts between Apex and MinMetals obligated Apex to pay MinMetals $20,483,272 for the AD AD-703 and AD-500A model DVD players that are at issue, after crediting Apex for the DVD players it later returned to MinMetals. (Gang Decl., ¶ 9). Apex has implicitly agreed that this amount is owed by accepting Invoices reflecting that same amount. (Gang Decl., ¶ 9; Compl., ¶¶ 15-23).

3. The Claim Is Not Secured By An Interest In Real Property.

MinMetals' claim is secured by a purchase money security interest in the DVD players and the proceeds from their sale, a security interest in personal property. (Gang Dec., ¶ 4). Therefore, the prohibition of Code of Civil Procedure section 483.010(b) (requiring that attachable obligation not be secured by *real property*) is not applicable.

4. The Claim Is Not Against A Natural Person.

MinMetals seeks recovery from Apex, a California corporation, under a commercial contract for purchase of DVD players, and does not seek recovery from any natural persons. Therefore, the restrictions of Code of Civil Procedure section 483.010(c) do not apply.

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

5. It Is More Likely Than Not Plaintiff Will Prevail On Its Claim.

Under California law, a plaintiff is entitled to a writ of attachment upon showing the probable validity of its claims, or that it is more likely than not that plaintiff will prevail. Cal. Code of Civ. Proc. § 481.190. The evidence establishes a very high likelihood that MinMetals will prevail against Apex on its claims for breach of contracts and account stated.

a. Breach of Contract.

An action for breach of written contract requires proof that (1) plaintiff and defendant entered into a contract, (2) plaintiff performed or was excused from performance, (3) breach by defendant, and (4) damages as a result of the breach. 4 B. Witkin, Cal. Procedure, "Pleading," § 476, p. 570 (4th ed. 1997). Each element is established in this case.

As set forth in the Declaration of Fang Gang filed concurrently herewith, MinMetals and Apex entered into a series of written contracts, pursuant to which Apex agreed to buy and MinMetals agreed to sell to Apex AD-703 and AD-500 model DVD players for specified prices. (Gang Decl., ¶¶ 3-9). MinMetals performed its obligations under the contracts by delivering to Apex the DVD players as required by the contracts, along with Invoices reflecting the amount due for each shipment. (Id., ¶¶ 8 & 9). Apex accepted these DVD players and Invoices totaling $22,742,340. (Id., ¶ 9). Apex has returned a small portion of the DVD players included on the Invoices, with a total purchase price of $2,259,068. (Id.). Crediting Apex for the price of the returned DVD players, the total outstanding amount unpaid, due and owing by Apex for DVD players is accepted and has not returned as of the date of this Complaint is $20,483,272. (Id.) Apex has breached the contracts by failing to pay for DVD players which it received and has not returned. (Id.) Therefore, MinMetals will prevail on its claim for breach of contract.

b. Account Stated.

An account stated consists of a new agreement to pay an agreed upon amount incurred in connection with a prior obligation, that is enforceable independently of the original obligation. California Milling Corp. v. White, 229 Cal.App.2d 469, 476-477, 40 Cal.Rptr. 301 (1964); Perry v. Schwartz, 219 Cal.App.2d 825, 829, 33 Cal.Rptr. 511 (1963). The indebtedness on the underlying

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

contract is sufficient consideration for the new obligation created by the account stated. Sure-Grip Skate Wheel Co. v. Bergin, 208 Cal.App.2d 562, 566, 25 Cal.Rptr. 413 (1962).

Where a written statement of indebtedness is sent by the creditor to the debtor, and the debtor acquiesces in that statement by failing to object, an enforceable account stated is created. See Zinn v. Fred R. Bright Co., 271 Cal.App.2d 597, 600, 76 Cal.Rptr. 663 (1969) (where creditor renders statement of account to debtor, who fails to object within reasonable period of time, law implies an assent that the account is correct as rendered); California Bean Growers Ass. v. Williams, 82 Cal. App. 434, 442-442, 255 P. 751 (1927). By its acquiescence in the statement, the debtor is precluded from challenging either the amount stated or the obligation to pay on the date stated. Perry, 219 Cal.App.2d at 829-830; see also Lacy Mfg. Co. v. Gold Crown Mining Co., 52 Cal. App. 2d 568, 126 P.2d 644 (1942) (account stated established by Invoices for services rendered).

As set forth above, with each shipment of the DVD players at issue, MinMetals delivered an invoice reflecting the amount due. (Gang Decl., ¶¶ 8 & 9). Apex accepted the Invoices and deliveries without objection. Apex also made payment on only certain of the Invoices. Apex did not object to Invoices totaling $20,483,272 for DVD players accepted by Apex and not returned, for which payment has not yet been made. (Id., ¶ 9). This establishes an account stated in the amount of $20,483,272 for which MinMetals is entitled to recovery.

6. Attachment Is Necessary To Ensure MinMetals' Ability To Enforce Any Judgment Resulting From The Arbitration Of Its Claims Against Apex.

While there is no requirement under California law that a plaintiff moving for attachment prove that attachment is necessary to ensure enforcement of any ultimate judgment, the facts in this case establish a particular need for the remedy of attachment.

First, as discussed above, in order to induce MinMetals to ship DVD players to Apex, Apex represented to MinMetals and agreed in writing that it would advise all of its customers to make payments directly to the Union Bank "lock-box" account. (Gang Decl., ¶¶ 5 & 6). Apex more recently has conceded to MinMetals that it did not notify its customers as required and as it had specifically represented, because, in the words of Apex's President David Ji, Apex supposedly felt it

would be "embarrassing" to do so. (Id., ¶ 6). Yet, Apex also did not deposit the money into the "lock-box" account after receiving the money from its customers, as required by its agreement, and which would not have "embarrassed" Apex. These failures and breaches have deprived MinMetals of a significant portion of the contractually-provided security for payment for the DVD players it shipped to Apex. Apex's willingness to make false representations to MinMetals in order to induce it to ship goods, combined with its admitted financial difficulties, provides compelling evidence that Apex may take additional steps to avoid payment.[2]

Second, MinMetals holds a purchase money security interest in the DVD players it sold to Apex, as well as all proceeds of Apex's sale of those DVD players. MinMetals' ability to enforce this security interest against the proceeds earned by Apex from future sales depends on MinMetals' ability to trace the proceeds. Cal. Comm. Code § 9306(3)(b). If Apex remains free to use proceeds from sale of MinMetals' DVD players, MinMetals may lose the ability to trace the proceeds and maintain its security interest in such proceeds. See, e.g., Chrysler Credit Corp. v. Superior Court, 17 Cal. App. 4th 1303, 22 Cal. Rptr. 2d 37 (1993). This could result in a loss of priority for MinMetals' purchase money security interest as to other secured creditors of Apex. (Gang Decl, ¶ 12). The loss of MinMetals' security interest is particularly harmful because Apex has recently admitted that it is having financial difficulties. (Id.). Unless an attachment is issued, funds in which MinMetals should have priority by virtue of its purchase money security interest will be lost to other creditors.

7. Plaintiff Does Not Waive Its Right To Arbitration By This Application.

Plaintiff does not waive its right to arbitration by its pursuit of this provisional relief. It is well-settled that an application for a writ of attachment is an ancillary proceeding, the results of which cannot be used in the main action, and a plaintiff's pursuit of this remedy is not inconsistent with the intent to arbitrate the main dispute. The Anoconda v. American Sugar Co., 322 U.S. 42, 44-45 (1944); Morris v. Morgan Stanley Co., 942 F.2d 648, 653 (9th Cir. 1991); Carolina Power &

---

[2] As set forth in the Gang Declaration, Apex has also admitted that it never intended to comply with the 75 day payment requirement in the Contracts, but agreed to the term because it knew MinMetals would not agree to do business with Apex otherwise. (Gang Decl., ¶ 11).

Light Company v. Uranex, 451 F.Supp. at 1051 (holding that courts may award provisional remedies ancillary to foreign arbitration proceedings); Boys Market, Inc. v. Retail Clerks Union, 398 U.S. 235 (1970); PMS Distributing Co., Inc., 863 F.2d at 642. MinMetals does not here seek to adjudicate the merits of its claims against Apex, which are subject to arbitration. MinMetals further requests that the Court stay the remainder of this action pending arbitration. (Compl., Prayer). See Oldroyd v. Elmira Savings Bank, FSB, 134 F.3d 72, 75-76 (2d Cir. 1998).

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that this Court issue a right to attach order and writ of attachment against Apex's property to ensure a judgment in plaintiff's favor will be satisfied and the ends of arbitration will not be frustrated. MinMetals further requests that this Court stay all further proceedings pending completion of the arbitration.

DATED: February 23, 2001

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP

By: ______________________
Julian Brew
Attorneys for Plaintiff CHINA NATIONAL METAL PRODUCTS IMPORT/EXPORT COMPANY

KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP